DE BEOF LUCCHESI, P.C.
Faith M. Lucchesi, Esq.
1402 S. Atherton Street
State College, PA 16801
814-231-4050
Faith@dlasc.com

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GERARD JACKSON, individually and on behalf of all others similarly situated, | : | Case No. 4:22-CV-00424-MWB |
| Plaintiff, | : | Hon. Matthew W. Brann |
| v. | : | **Opposition to Plaintiff's Motion for Leave to File First Amended Complaint** |
| LOCUST MEDICAL, LLC | : | |
| Defendant. | : | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 4

II. PROCEDURAL HISTORY ..... 5

III. ARGUMENT ..... 6

a. Plaintiff's "Defendant Lied" Argument ..... 6

b. Plaintiff's Rules -Based Justification Fails ..... 8

c. Plaintiff's Request is Made in Bad Faith ..... 11

IV. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Statutes & Rules** **Page**

47 U.S.C. § 217 ........................................................................ 10

47 U.S.C. § 227 ........................................................................ 10

Fed. R. Civ. P. 15(a)(2) ........................................................................ 8

Fed. R. Civ. P. 19(a)(1)(A) ........................................................................ 9

**Cases**

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ........................................ 12

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) ........................ 10

*Mattia v. Allstate Ins. Co.*, No. CIV A. 14-2099, 2014 WL 2880302 at *5 (E.D. Pa. June 24, 2014) ........................................................................ 9

*State v. Universal Elections*, 787 F. Supp. 2d 408, 411 (D. Md. 2011) ................ 9, 10, 11

*Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1144 (4th Cir. 1975) .......... 9

*Tullett Prebon PLC v. BGC Partners, Inc.,* 427 Fed. Appx. 236, 239 (3rd Cir. 2011) ............... 10

*United Takeda Pharms. USA, Inc. v. Spireas,* No. CV 17-0452, 2017 WL 44011988 (E.D. Pa. Oct. 3, 2017) ........................................................................ 10

## I. INTRODUCTION

On January 19, 2022, Jeremy C. Jackson, son of and counsel for Plaintiff Gerard Jackson, faxed a letter to George Spadaro, ("Spadaro"), Locust Medical, LLC, ("Locust") and Summer Supply Company, LLC, ("Summers") demanding $50,400.00 upon the threat of litigation. (Exh. 1.) Counsel therein admitted, "Mr. [Gerard] Jackson received these braces from Locust Medical, LLC ("Locust") and Mr. Jackson's Medicare was billed by Locust on December 23, 2021." (Exh. 1.). Although the singular sale complained of was alleged to have been through only Locust, counsel threatened a Qui Tam action against Spadaro, Locust Medical, and Summers which included alleged criminal violations, and "for <u>all</u> Durable Medical Equipment that Locust and Summers billed to Medicare, not just my client's." Exh. 1, emphasis original. And finally, plaintiff closed his demand letter with the following:

> "If this matter is not promptly settled a Complaint will be filed that will name not only your companies, **but under Pennsylvania's Participation Theory of Liability, George Spadaro** will also be named individually, along with any other participating collaborators, co-conspirators, owners, officers, members, directors, and/or individuals that are found through Discovery." (Exh. 1, emphasis added.)

Counsel for Locust responded that the threat of settlement in compromise of the alleged stated violations, including the criminal statutes, was not only declined, but beyond the authority of Plaintiff's counsel. Nonetheless, Locust said it would accept the return of equipment and issue a refund to Medicare, which occurred.

Plaintiff was well-aware of Spadaro before filing the instant action, but now seeks to add him as an individual defendant for spurious reasons as discussed herein, far outside of the time permitted in the Case Management Order, alleging that doing so will "secure the just, speedy, and inexpensive determination of this [proposed] class action dispute." Motion, page 1. Plaintiff's actions to date have been anything but speedy, or honest, and the requested addition of another party is acknowledged to be for the sole purpose of having a source for the payment of a

judgment, but not for the purpose of justice.

## II. PROCEDURAL HISTORY

The parties herein were subject to a Case Management Order ("CM Order") dated November 20, 2022 in which it mandated that additional parties shall be joined and all pleading amended by March 31, 2023." (Case Management Order ¶¶ 1 & 2.) Discovery was to conclude by July 3, 2023, which occurred, although Plaintiff requested a document that had been timely produced to be provided in an alternative format, which was supplied without complaint on July 23, 2023.

Plaintiff was required to file his motion for class certification in September, but requested additional time which Defendant did not oppose. By Order dated September 5, 2023, Plaintiff was granted an additional four months until January 5, 2024 to file a motion for class certification. That deadline passed without a filing.

On February 13, 2024, Plaintiff once again requested an extension of time to file a motion for class certification alleging a discovery dispute. Defendant filed an Affidavit in Opposition the following day, indicating that there was no discovery dispute, and that discovery had been complete since July 2, 2023 as per the CM Order. Plaintiff acknowledged that a dispute did not exist in a joint conference call with the Court and was granted reprieve from to still file his motion for class certification.

Consistent with the spirit of the Case Management Order, which required counsel to discuss settlement upon the conclusion of discovery, Plaintiff made an oral settlement demand and counsel for Defendant replied by email, declining, and further suggesting that Plaintiff abandon this case and focus on this party Plaintiff's other putative class actions in this district, since he is looking for a big payday and this Defendant is not appropriate for that purpose,

assuming a finding of liability, which I do not see as possible. (Plf's Exh. 1 to motion.). Additionally, Gerard Jackson, plaintiff, acknowledged in his deposition testimony that he ordered multiple medical devices and allowed the same to be billed to Medicare for an improper purpose, (*Also see* Exh. 1 wherein counsel admits that Plaintiff ordered device he did not need and allowed he same to be billed to Medicare) which is an abuse of that government program, and having that admission made in a court of law may prove problematic for him. Defendant's counsel also cautioned that the Defendant does not have assets and that in the unlikely event that Plaintiff prevails, it would be a hollow victory and suggested that Plaintiff focus his efforts on his other pending class-action suits. Discovery had concluded 7 months before the email was sent, and the simple fact is, Plaintiff simply never inquired into Defendant's assets either before filing the matter, or in discovery.

## III. ARGUMENT

### a. Plaintiff's "Defendant Lied" Argument Fails

Plaintiff asserts, "in a *deliberate* attempt to hide critical facts from the Plaintiff and mislead both the Plaintiff and the Court…." (Motion p. 2, emphasis original), and "Defendant's *own misconduct* of flat-out lying in discovery that caused the harm at issue here and did not allow the Plaintiff to amend any sooner." (Motion p. 4, emphasis original). The alleged "lie" is that Defendant Locust doesn't have any assets if a judgment is obtained, but Plaintiff cannot point to a lie, or even to a request from Plaintiff for the information.

Instead, Plaintiff cites to four true statements made by Locust in its deposition that do not, no matter how liberally construed, address the extent or value of Locust's assets. Nor do the statements show that critical facts were hidden, or that the Court or Plaintiff were misled, as Plaintiff accuses.

Specifically, Plaintiff relies on the following statements by Locust:

(1) That Locust had an office in Clinton, West Virginia;

> **<u>Defendant's Response</u>**: This is the location of Locust's business address which is a rental. Plaintiff did not ask if the property was owned or rented. Defendant spoke the truth.

(2) That individuals can walk into the office and purchase medical supplies, and they get "a lot of walk-ins."

> **<u>Defendant's Response</u>:** A member of the public can order medical supplies in person just as they can on the phone and all such purchases were handled the same way, Locust would place the order with the appropriate supplier who wound direct mail the goods to the customer, just as occurred with this Plaintiff when he made a fraudulent telephone order. Plaintiff did not ask Defendant if Locust was a retail business, it is not, or if it owned inventory, it does not. Defendant spoke the truth.

(3) That Locust Medical had appropriate licenses in the United States, including the ability to bill Medicare.

> **<u>Defendant's Response</u>**: Defendant does hold appropriated licenses in the United States including the ability to bill Medicare. Plaintiff alleges Defendant billed Medicare for the goods purchased in the complaint and in his Jan, 19, 2022 letter (Exh. 1). Plaintiff did not ask any follow-up questions, and Defendant spoke the truth.

(4) [That Locust] Employs two persons to handle logistics in the United States.

> **<u>Defendant's Response</u>**: Locust did employ two people to handle logistics in the United States. Employees answered the phones, placed the drop-ship orders, and answered incoming consumer calls. The same persons would accept in-person orders, along with handling other daily office tasks. Plaintiff did not ask any follow-up questions, Defendant spoke the truth.

Plaintiff's failure to ask appropriate follow-up questions for his purposes is not an indication that Defendant *deliberately* hid critical facts or that he *flat-out lied*. To be sure, admitting to a 2-person operation makes it apparent, or at least likely, that the Defendant may be a very small operation and if Plaintiff's actual purpose in pursuing this matter is a large payout then it was Plaintiff's failure to pursue information that failed him. Defendant did not lie.

Moreover, the remedy for a discovery infraction would be to reopen discovery and/or to request sanctions against Locust. But Plaintiff affirmed in page 2 of his motion that he will not seek to reopen discovery. To the extent Plaintiff wishes to educe the above facts at trial or use the deposition to impeach a witness, he does not have to amend a pleading out of time and bring in another defendant to do so.

**b. Plaintiff's Rules -Based Justification Fails**

Having failed to show that Defendant lied, Plaintiff looks to the Federal Rules of Civil Procedure, again without articulable factual justification, arguing that it is in the interest of judicial economy to add Spadaro out of time by misrepresenting law and creating facts that do not exist.

Plaintiff first relies on Fed. R. Civ. P. 15(a)(2) to argue that justice requires adding the individual defendant. Nothing could be further from justice for George Spadaro. This entire case is Plaintiff's attempt to hold Locust responsible for alleged wrongful telephone calls made by independent third-party vendors. Now Plaintiff seeks to stretch that vicarious liability one degree further to an employee of Locust, more than seven months after the permissible date set in the Case Management Order and upon no new information. To be sure, Plaintiff's January 19, 2022 facsimile to the defendant threatened litigation against Spadaro on a participation theory, and they choose not to pursue it, likely because Spadaro didn't participate, which was a prudent decision.

Plaintiff is seeking leave of this Court to file a pleading that exposes an individual to liability more than a year after the deadline to do so, with no justification whatsoever for Plaintiff's dilatory pursuit of his case. Counsel gained no new knowledge regarding Spadaro's existence in discovery, nor has he so alleged. To be sure, Counsel's January 19, 2022 letter

clearly admits he was aware of Spadaro. Aside from the strategic choices solely attributable to Plaintiff's counsel, he has also not shown that Spadaro as an individual could be held liable to justify amending a pleading out of time and joining the party in this matter. The test for such liability is stated in a case Plaintiff relies upon, and quoted by another, in his pleading and has been explained as: "Indeed, when a corporation violates a statute, individuals who "voluntarily and intentionally caused the corporation to act" in violation of the statute can be personally liable for those statutory violations, such as when a director votes for the commission of an unlawful act." *State v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011), quoting *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1144 (4th Cir. 1975).

Plaintiff merely accuses Locust of a "*laissez-faire* policy with respect to vendors" (Motion p. 3, emphasis original), but not of intentional or affirmative acts. In the absence of such acts, Spadaro cannot be said to be a proper defendant or that justice requires his joinder.

Plaintiff next looks to Fed. R. Civ. P. 19(a)(1)(A) to allege Spadaro is necessary for the Court to accord complete relief among existing parties and alleges, without proof as it does not exist, that Spadaro is a party to a contract which is the subject of the litigation. (*See* Motion p. 3.) Primarily, this litigation is not contract based. Moreover, to the extent that a contract exists between Locust and third-party vendors, that does not implicate Spadaro in his individual capacity and as previously stated, the actual maker of the calls, the other party to the contract, was not joined.

Plaintiff's reliance on *Mattia v. Allstate Ins. Co.*, No. CIV A. 14-2099, 2014 WL 2880302 at *5 (E.D. Pa. June 24, 2014) similarly doesn't support the contention asserted. *Mattia* is a breach of contract case between an insured and his insurance company. The contract forms the basis of the matter, which is not true here. The Defendant party to the contract Plaintiff

refers to is Locust Medical. This Plaintiff was neither a party to the contract nor an intended beneficiary thereto. While the Plaintiff does not address the contract terms, nothing in the contract caused the vendor to violate the TCPA (47 U.S.C. § 227 et seq.) such that this Defendant Locust could be said to have participated in the acts, assuming the same arguendo.

*Tullett Prebon PLC v. BGC Partners, Inc.,* 427 Fed. Appx. 236, 239 (3rd Cir. 2011) is equally inapposite as it involved wholly-owned subsidiaries of parent corporations, but not the individual owners therein. "The parties in this diversity action are involved in the inter-dealer broker business." *Id at* 237. It did not involve any individuals who were acting in their roles as employees or officers of the corporate entity defendants.

*United Takeda Pharms. USA, Inc. v. Spireas,* No. CV 17-0452, 2017 WL 44011988 (E.D. Pa. Oct. 3, 2017) is equally problematic for Plaintiff's purpose. The defendants in *United Takeda* held patents in their individual capacities and signed agreements for the use of their patents as individuals. The parties to the contract that formed the basis of the matter were proper defendants.

Plaintiff's reliance on 47 U.S.C. § 217, to ascribe personal liability as discussed in *Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) also does not address the instant matter. 47 U.S.C. § 217 refers to persons "acting for or employed by any common carrier or user, acting within the scope of his employment…." Spadaro was not acting for or employed by any common carrier and did not make any telephone calls, neither did Locust. In *Maryland,* the defendants were described as such: "Universal Elections is a Maryland limited liability corporation that offers various services to candidates for political office, including broadcasting prerecorded voice messages to voters. (Complaint ¶ 7.) Julius Henson is an owner and officer of the company, and Rhonda Russell is an employee." *State v. Universal Elections*, 787 F. Supp. 2d

408, 411 (D. Md. 2011). The court then further explained:

> "Courts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of § 227(d) if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *(citations omitted) State v. Universal Elections*, 787 F. Supp. 2d 408, 415 (D. Md. 2011).

*Universal Elections* addresses the officers and employees of the vendors, but extending liability to Locust and thereafter to Spadaro, requires affirmative acts not a *laissez-faire* policy. Plaintiff does not allege that Spadaro had "direct, personal participation" or "personally authorized the conduct" that was alleged to have been committed by the third-party vendors. Plaintiff's sole connection from the vendor through Locust to reach Spadaro is that he signed the vendor contract on behalf of the corporation. Plaintiff does not allege, because he cannot, that the contract authorized the conduct.

This double-removed liability is not supported by Plaintiff with any authority, or a copy of the alleged permissive contract.

**c. Plaintiff's Request is Made in Bad Faith**

Just as when Plaintiff filed a Motion for Extension of time a month after the deadline for filing his Motion for Class Certification with a lie about a discovery dispute that *never existed*, Plaintiff now falsely alleges that Defendant lied. He didn't.

In truth, as discussed, it was Plaintiff's lackluster discovery that did not even attempt to uncover the inconvenient fact that there are no funds available to support a recovery. That inconvenient fact does not form a basis to open the pleadings outside of the Case Management Order nor does it form a justifiable basis to now harm George Spadaro[1].

[1] Plaintiff did not investigate the available assets of Spadaro, but was informed that Spadaro is equally void of U.S. assets as is Locust Medical, LLC.

As Plaintiff recognizes, whether justice requires an amendment is a question left to the trial court's sound discretion. Reasons for denying a plaintiff's request for leave to amend a complaint include prejudice to the nonmoving party, undue delay, bad faith or dilatory motive, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The amendment permitted in *Foman* was limited to adding an alternate theory for recovery, but did not require the joining of an additional defendant.

It is difficult to identify any act more grounded in bad faith than a plaintiff blaming its strategic choices on the defendant, accusing the defendant lying, and then not proving a lie.

It is difficult to identify an act more dilatory than threatening to sue an individual on January 19, 2022, choosing not to, then being subject to a Case Management Order in which that same party could have been joined until March 31, 2023, again choosing not to, but then asking the Court to grant leave to so act after another year passed.

It is impossible to identify an act more prejudicial to the non-moving party, George Spadaro, who has not had an opportunity to engage in discovery, which deadline has passed, and who Plaintiff has admitted he seeks to add for the sole purpose of collecting an anticipated recovery.

It is impossible to identify and act more futile than adding Spadaro for a purpose that cannot be fulfilled any more than it can by Locust.

## IV. CONCLUSION

Plaintiff's request is woefully out of time as set forth in the original Case Management Order[2] for amending a pleading or joining a party and is in all other aspects, futile, unsupported, and in bad faith.

[2] A subsequent order pursuant to Plaintiff's second request for additional time to file a motion for class certification cancelled future deadlines but did not void the past deadlines.

For the reasons set forth above, Defendant asks this Court to deny the motion for leave to file amended complaint as is in the Court's discretion.

April 5, 2024

Respectfully submitted,

DE BOEF LUCCHESI, PC

By: */s/ Faith M. Lucchesi*_________

Faith M. Lucchesi
PA ID No. 86323
De Boef Lucchesi, PC
1402 S. Atherton Street
State College, PA 16801
Voice: (814) 231-4050
Faith@DLASC.com

*Counsel for Defendant*

## CERTIFICATION OF COMPLIANCE

The undersigned counsel certifies that the foregoing brief complies with the word count limit stated in L.R. 7.8(b)(2). Omitting the case captions, tables, and counsel's signature block but including all footnotes, this brief contains 2898 words as determined by counsel's word processor.

*/s/ Faith M. Lucchesi*_________
Faith M. Lucchesi