DE BEOF LUCCHESI, P.C.
Faith M. Lucchesi, Esq.
1402 S. Atherton Street
State College, PA 16801
814-231-4050
Faith@dlasc.com

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GERARD JACKSON, individually and on behalf of all others similarly situated,
Plaintiff,

v.

LOCUST MEDICAL, LLC
Defendant.

Case No. 4:22-CV-00424-MWB

Hon. Matthew W. Brann

---

**DEFENDANT'S MOTION TO DENY CLASS CERTIFICAITON WITH SUPPORTING BRIEF**

## TABLE OF CONTENTS

**Motion To Deny Class Certification** .......... **4**

**BRIEF.** .......... **4**

I. OVERVIEW .......... 4

II. FACTUAL BACKGROUND .......... 5

A. Defendant's Drop-Shipment Business Model is Legal .......... 5

B. Defendant's Vendor Contract During the Relevant Period .......... 6

C. Plaintiff's Opt-In for Contact .......... 8

**ARGUMENT** .......... **8**

III. VICAROUS LIABILITY RESTS ON FEDEAL COMMON LAW AGENCY PRINCIPLES .......... 8

A. Federal Common Law Agency Principles & The TCPA .......... 11

IV. THE PROPOSED CLASS DEFINITION .......... 12

V. CLASS CERTIFICATION REQUIREMENTS UNDER RULE 23(A) AND RULE 23(B)(2) CANNOT BE MET .......... 13

A. Class Certification Requirement 1: Numerosity .......... 15

B. Class Certification Requirement 2: Commonality .......... 15

C. Class Certification Requirement 3: Typicality .......... 16

D. Class Certification Requirement 4: Adequacy .......... 16

E. Class Certification Requirement 5, Rule 23(B)(2): .......... 16

VI. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

Statutes & Rules Page

47 U.S.C. § 227 ....................................................................................................................4

Federal Rule of Civil Procedure Rule 23 .......................................................................4, 8, 16, 17

Cases and Agency Rulings

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ........................................................................14

Federal Communications Commission's DISH Network et al Petition for Declaratory Ruling re: TCPA Rules (FCC-13-54A1 ........................................................................ 8-11

*In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 316 n.14 (3d Cir. 2008) .....................12

*KHS Corp. v. Singer Fin. Corp.*, CIVIL ACTION No. 16-55 (E.D. Pa. Aug. 23, 2018) .......5, 14

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .................................................13

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) ................................................................................................................................14

*Smith v. Vision Solar LLC*, Civil Action 20-2185 (E.D. Pa. Apr. 20, 2022). .......................11, 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 at 350-52 (2011) ...............................................14

Secondary Sources

Restatement (Third) of Agency § 1.03 ..........................................................................................11

Restatement (Third) of Agency § 2.03 ..........................................................................................11

## MOTION

Defendant LOCUST MEDICAL, LLC, ("Defendant") moves this court to deny class certification. As set forth in the contemporaneously filed brief, Plaintiff has failed to qualify the matter for class certification under Federal Rule of Civil Procedure Nos. 23(a) and 23(b)(2) as related to the Telephone Consumer Protection Act (TCPA) of 1991.

## BRIEF

### I. OVERVIEW

Plaintiff brings this putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which prohibits making telephone calls to a person whose telephone number is on the national "do not call" registry. 47 U.S.C. §227(c). Being on the do not call registry does not result in an absolute ban of contact as a listed number can both be removed from the list, and it can otherwise opt-in to receiving certain communications by consent when accessing website information and accepting the terms of service. That is what that happened here.

At this phase the Court does not decide the merits of Plaintiff's claim, but whether the putative class definition conforms to the requirements of the Federal Rules of Civil Procedure. Plaintiff's proposed class cannot satisfy the requirements on two interrelated trajectories. The first is that to hold this Defendant vicariously liable, Plaintiff has to establish wrongdoing of the ostensible agent through an analysis of federal common law agency principles. He has not done so. The second is that even if an agency relationship is established, Plaintiff must show for each and every class member all of the following: (1) that on the date of any objectionable telephone call, (2) the telephone number was actively listed on the do not call registry, (3) for the previous thirty days, and (4) the owner of the telephone number wasn't (5) removed from the registry by

disconnecting their telephone number[1], and (6) that the person didn't opt-in to the contact for a particular purpose, as this Plaintiff did.

The inquiry for every objectionable call would require a mini-trial and extensive discovery for each and every putative plaintiff which defeats nearly every element of class certification. This requirement was addressed by the Eastern District in a TCPA case when it observed, "[T]he Court finds that individualized consent issues would require a series of mini trials, thus defeating predominance and superiority." *KHS Corp. v. Singer Fin. Corp.*, CIVIL ACTION No. 16-55, at *7-8 (E.D. Pa. Aug. 23, 2018). Even the FTC warns that the Do Not Call Registry stops *unwanted* calls, not *all* calls.

## II. FACTUAL BACKGROUND

Plaintiff, once again, is stating a negative opinion of Defendant without facts to support his contention that Defendant "lied," when it did not. As Plaintiff's bald allegation is specifically addressed in Defendant's opposition to Plaintiff's pending motion for leave to amend his complaint, Defendant incorporates that argument hereat.

### A. Defendant's Drop-Shipment Business Model is Legal

Defendant Locust Medical, LLC ("Locust") is a drop-shipment company, not a shell as alleged by Plaintiff. As a drop-shipment company, Defendant accepts orders for medical supplies, then places the order with the proper supplier of the medical equipment, who then ships the items directly to the buyer, which is known as the "drop-shipment." This business model is not only legal, but common. Amazon began as a drop-shipper of books and continues to operate as such. Netflix began as a drop-shipper of DVDs. This list of drop-shipping companies is long,

[1] This can occur purposefully, or when a bill has not been paid for a period of time and the provider disconnects service.

and the model is not indicative of a "shell company" as Plaintiff wrongly alleges. Drop-shipping is simply a way to conduct business that works for the manufacturer, the wholesaler, and the retailer, as well as for the consumer who may not have local access to desired goods.

**B. Defendant's Vendor Contract in the Relevant Period**

Plaintiff similarly opines, again without proof, that Defendant "intimately controlled their vendors' conduct on nearly every aspect *except* compliance." Plf. Motion p. 3. This allegation is without teeth, internally contradictory, and in stark contrast to Plaintiff's exhibits.

Plaintiff acknowledges that Defendant testified: "As long as the marketing companies are following [the TCPA] and not violating it and insuring they're calling the opt ins and can provide the proof of the opt ins, we're satisfied." (Exh. 1, Locust Dep. 38:12-16.). Additionally, Defendant's contract with his vendor required compliance, and the campaign parameters similarly required compliance.

Defendant took affirmative steps to ensure that third party vendors complied with TCPA. This exchange with Plaintiff's counsel occurred in the Locust Deposition at pages 17 line 22 through page18, line 17 (Exh. 1):

Q. Do each of the companies have a contract?

A. Yes.

Q. Do any of the companies have a restricted marketing clause?

A. Absolutely.

Q. What were some of those restricted marketing clauses as you recall?

A. One of the restrictions was for the campaign, is what they'd call it. The campaign is only for opt in and it's specified for the regions within we work and that's pretty much it. They should know automatically which is also in there what's called the TCPA, which is the telephone

consumer protective clause, so they need to qualify and if they're a licensed center. They already know the information and it's all specified in the contract and their [sic] the ones responsible and they should follow the guidelines that are in the TCPA.

Plaintiff alleges 8 wrongful telephone calls made to his residential telephone between December 6 and December 22, 2021. Defendant was under a contract with Central Tact (Exh. 2) on the dates of the alleged wrongful telephone calls. The contract between Central Tact and Locust included all of the following, contrary to Plaintiff's assertion that Locust had a lackadaisical attitude.

- Paragraph 5: All raw leads shall affirmatively consented [sic] in writing or recorded discussion to be contacted by telephone by a DME supplier.
- Paragraph 5: CENTRAL TACT shall maintain Lead consent records…
- **Limitations of Liability and Indemnification**
- THE CENTRAL TACT CAMPAIGN DETAILS
    - Criteria: Opted in to receive information on durable medical equipment
    - Answered yes on Web form to be contacted by phone to receive information.
    - Consumer issues: Back pain, knee pain Shoulder pain, Wrist pain, Elbow pain and ankle pain
    - Product interests: Orthotics

Upon learning of the alleged wrongful call to Plaintiff, Locust contacted Central Tact for an explanation and Central Tact indicated Plaintiff opted in to receiving certain calls and provided their documentation. (Exh. 2). Defendant also immediately accepted a return of Plaintiff's purchase and refunded Medicare.

Defendant's testimony, documents, and conduct not only show a proactive approach with vendors, but the documents also conclusively show that legal compliance with TCPA's permitted opt-in communications were mandated.

### C. Plaintiff's Opt-In to Contact

Upon receiving Plaintiff's demand letter upon threat of litigation, (Exh. 3), Defendant immediately contacted his vendor (Plaintiff would call this "policing" the vendor), who supplied the opt-in information related to Plaintiff's telephone number. (Exh. 4.) This opt-in confirmation indicated that Plaintiff accessed the website MedicarePlansNow.org and in doing so, consented to the site's terms and conditions which include consent to contact by any of the websites managed by the owner, and also, other sites that Blip Marketing operates. (*See* Exh. 5, "About These Terms of Use" clause.) The same paragraph acknowledges that the site offers a wide range of services and products and that by accessing the information, the user accepts supplemental terms. Exh. 5. Paragraph 2 of the agreement extends the consent to affiliates.

This conundrum is illustrative of both the agency requirement and the class certification requirements for the Plaintiff.

## ARGUMENT

## III. VICARIOUS LIABILITY RESTS ON FEDERAL COMMON LAW AGENCY PRINCIPLES

Locust does not originate telephone calls from the business, consequently, Plaintiff's Motion for Class Certification rests on establishing both a Federal common law agency relationship between Locust and the vendor, and satisfaction of the Federal Rules of Civil Procedure (FRCP) Rule 23(a) and Rule 23(b)(2), neither of which can be accomplished under the current facts as developed.

Plaintiff relies on the Federal Communications Commission's DISH Network et al Petition for Declaratory Ruling re: TCPA Rules (FCC-13-54A1) ("Dish") for guidance. So does Defendant for both an ultimate defense, and to expel the contention that this matter is appropriate for class certification arising out of alleged vicarious liability as to Locust or the additional party,

twice removed from the vendor, George Spadaro, as Plaintiff now seeks out of time in a related motion.

After exhaustive discussion, the FCC concluded as follows regarding vicarious liability under the TCPA at ¶44:

"Sellers can simultaneously employ third-party telemarketers and protect their legitimate commercial interests by exercising reasonable diligence in selecting and monitoring reputable telemarketers and by including indemnification clauses in their contracts with those entities.[2] "Moreover, imposing vicarious liability on the seller would in no way absolve the third-party telemarketer of joint liability." *Id*. As discussed in Section II B, *supra*, Defendant's contract with the vendor addressed the requirement of consent, had an indemnification clause, and appropriately defined the campaign parameters. Thereafter, when a single allegation was made about an unwanted contact, the vendor provided the requested opt-in proof.

The TCPA is not a strict liability statute. Sellers are not automatically liable for vicarious acts. Instead, the seller must exercise reasonable diligence in selecting and monitoring those entities and the telemarketer is not absolved of joint liability.

The Dish decision provides "illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations" Dish, ¶ 46, none of which were breached by Locust. Specifically:

(1) "apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's

---

[2] *See* FTC Reply at 2 n.2; ATA Comments at 3.

exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information" and

(2) "the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems" and

(3) "the authority to use the seller's trade name, trademark and service mark; and

(4) "the seller approved, wrote or reviewed the outside entity's telemarketing scripts" and

(5) [marketer conduct] "that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

Currently, this Plaintiff does not allege any facts to support items 1-4 above, and the same are not in the record, but Plaintiff appears to be basing his claims on example 5, ignoring the prerequisite of proving the telemarketer violated the TCPA in the first place. It is only after establishing the agent's liability, that the law looks to whether the principal "knew or reasonably should have known" that the marketer violated TCPA, and then also failed to take effective steps to cease the conduct.

Instantly, Locust had contracts and campaign dictates that ensured actual TCPA compliance. When notified of an alleged violation, Locust immediately demanded accountability and was provided proof of an opt-in (consent) to the contact. At all levels, Locust displayed reasonable diligence in its use of a vendor.

The Dish conclusion confirms that while vicarious liability may attach to a seller, it is not strict liability and federal common law agency principles must be considered: "We clarify that, while a seller does not generally initiate calls made through a third-party telemarketer, it

nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services." Dish at ¶48.

**A. Federal Common Law Agency Principles & The TCPA**

The Dish STATEMENT OF COMMISSIONER AJIT PAI, APPROVING IN PART AND DISSENTING IN PAR, Tin Dish recites agency considerations succinctly. "The black-letter law of apparent authority is that third-party liability accrues when a person "reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." (*Citing to* Restatement (Third) of Agency § 2.03.) The principal may manifest assent or intent "through written or spoken words or other conduct." (*Citing to* Restatement (Third) of Agency § 1.03.) The key problem with this theory for victims of TCPA violations is that they interact only with the telemarketer, not the seller, and thus there are no (apparent) manifestations *by the seller* on which to hang the hat of apparent authority. Dish, p.29, Section III.

The Federal Courts have addressed agency in TCPA matter as such:

"The party seeking to assert an agency relationship and establish vicarious liability bears the ultimate burden of proof." *Smith v. Vision Solar LLC*, Civil Action 20-2185, at *4 (E.D. Pa. Apr. 20, 2022). "Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority [,] and ratification," and the "relationship between the parties is paramount in determining whether there can be vicarious liability." *Id.*

Plaintiff's extensive unsupported argument about the Defendant's failure to "police" its vendor is betrayed by the facts he puts forth, as is the ultimate culpability of the vendor. This

factor mitigates against the single telephone call that supports Plaintiff's entire class action certification request.

## IV. THE PROPOSED CLASS DEFINITION

The "burden of the party seeking class certification to establish that all relevant requirements have been met, *see In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 316 n.14 (3d Cir. 2008)" *Smith v. Vision Solar LLC*, Civil Action 20-2185, at *4 (E.D. Pa. Apr. 20, 2022).

Plaintiff seeks to define the class as:

> **National Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls (sic) from or on behalf of Defendants, (sic), including from the vendors Central Tact LLC, Clyrex, and In Call (sic) (3) within a 12-month period, (4) from four years prior (sic) the filing of the Complaint.

There are many flaws to Plaintiff's proposed class definition that cannot be cured or do not make sense under the existing circumstances. An overly broad definition would bring in a potential class that includes subsequent acquirers of abandoned telephone numbers and people who otherwise consented to contact while for other purposes, were listed on the do not call registry.

First, the preamble group, "All persons in the United States" – This plaintiff does not conduct business in the entire United States (Locust depo., page 12, line 22-24), but only in the Eastern states of West Virginia, Virginia, Pennsylvania, and Ohio where people do not have easy access to medical supplies. (Locust depo., p. 9, l 23 – p. 10, l 13.). This proposed criterion is geographically overly broad.

Criteria 2: Plaintiff did not join the marketing companies or acquire their call logs such that he can prove which calls were made by or on behalf of Defendant. Additionally, Locust does not control those records for authentication purposes, and Plaintiff did not join the makers

as necessary parties, nor subpoena their records, and discovery is closed.

Criteria 3 and 4: Locust was established as a business in 2020, the precise date not in the record, the singular alleged problematic telephone call was received by this Plaintiff in November 2021, and the Complaint was filed on March 21, 2022. The relationship with Central Tact began on November 1, 2021. (*See* Exh. 2, Central Tact contract.) This proposed criterion is temporally overly broad.

To support class certification, the Plaintiff correctly alleges that “individual joinder of these persons is impracticable” (Comp. ¶ 36), while incorrectly alleging that “The Class as defined above are [sic] identifiable through phone records and phone number databases.” (Comp. ¶ 34.). This is not true, as the TCPA does not have strict liability for any telephone but instead recognizes both accidental removal from the registry and actions that result in an opt-in for receiving certain information. Plaintiff’s statement is a mere starting point that would necessarily lead to extensive discovery and a determination as to inclusion of each member by the Court.

Plaintiff’ proposed class definition is unworkable.

## V. CLASS CERTIFICATION REQUIREMENTS

“To warrant certification, a "class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). To meet the requirements of Rule 23(a): "(1) the class must be 'so numerous that joinder of all members is impracticable' (numerosity); (2) there must be 'questions of law or fact common to the class' (commonality); (3) 'the claims or defenses of the representative parties' must be 'typical of the claims or defenses of the class' (typicality); and (4) the named plaintiffs must 'fairly and adequately protect the interests of the class' (adequacy of

representation, or simply adequacy)." *KHS Corp. v. Singer Fin. Corp.*, CIVIL ACTION No. 16-55, at *4 (E.D. Pa. Aug. 23, 2018) (*citing In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)-(4))."

Plaintiff here seeks certification under the additional criteria found in Rule 23(b)(2).

**RULE 23(a)(1)**

> Rule 23(a) requires: "(1) the class must be 'so numerous that joinder of all members is impracticable' (numerosity); (2) there must be 'questions of law or fact common to the class' (commonality); (3) 'the claims or defenses of the representative parties' must be 'typical of the claims or defenses of the class' (typicality); and (4) the named plaintiffs must 'fairly and adequately protect the interests of the class' (adequacy of representation, or simply adequacy)."

"Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. . . . [T]o certify a class the court must thus find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). Before certifying a class, a court must perform a "rigorous analysis" to ensure that all the Rule 23 prerequisites have been satisfied. *KHS Corp. v. Singer Fin. Corp.*, CIVIL ACTION No. 16-55, at *5 (E.D. Pa. Aug. 23, 2018), (citing to *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), and quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 at 350-52 (2011)."

While the Court does not decide at this stage if the proposed class representative consented to the contact, it is precisely that inquiry that makes this vicarious liability class action problematic for class certification as each putative class member could have consented to the contact. *See*, *e.g.*, *Sandusky Wellness Ctr.*, *LLC v. ASD Specialty Healthcare*, *Inc.*, 863 F.3d 460, 470 (6th Cir. 2017), as relied upon in *KHS Corp. v. Singer Fin. Corp.*, CIVIL ACTION No. 16-55, at *7 (E.D. Pa. Aug. 23, 2018), wherein the Sixth Circuit affirmed a district court's denial of a TCPA class based on individualized consent issues. While *Sandusky* was a facsimile based

contact, the consent issue is identical.

### A. Class Certification Requirement 1: Numerosity

In a TCPA action, numerosity would be the number of persons allegedly wrongly contacted. This requires more than a list as Plaintiff suggests, but within that list, each telephone number must first be identified as being on the do not call registry for the requisite amount of time, on the date contacted and once that fundamental is established, the number must be tested for whether the person agreed to be contacted despite being on the registry or if the number underwent some other exclusion from the do not call registry, such as having been disconnected[3]. This multi-step inquiry for each and every number would require a mini-trial of each plaintiff, defeating the numerosity requirement. As previously observed by the Eastern District of Pennsylvania, "[T]he Court finds that individualized consent issues would require a series of mini-trials, thus defeating predominance and superiority." *KHS Corp. v. Singer Fin. Corp.*, CIVIL ACTION No. 16-55, at *7-8 (E.D. Pa. Aug. 23, 2018).

### B. Class Certification Requirement 2: Commonality

For the same reason that numerosity is defeated, so is commonality. The questions of fact regarding whether, when, if, and if there was an opt-out for this purpose are common questions that would have to be resolved before reaching the ultimate issue.

Plaintiff's reliance to support a finding of commonality is stated as, "because the Class suffered a common injury in Defendants hiring various vendors to call their respective telephone numbers without policing such vendors, together with Defendants failing to have internal do not

[3] The FTC warns that, "If your number is disconnected and then reconnected, you might need to register your number again." FTC Consumer Advice National Do Not Call Registry FAQs.

call policies or procedures in place." (Plf's Motion p. 9.) Plaintiff is not relying on the elements of federal common law agency with his "policing" argument. As discussed supra, the word "policing" was used to establish the agency linkage to vicarious liability, but it does not itself lead to liability. The lack of internal do not call procedures is a result of the reality that Locust does not make outgoing calls to consumers. Consequently, one would be of no more value than having a policy on lending when it isn't a bank. The only lead generator with whom Locust was under contract relating to this matter, Central Tact, did have proper procedures in place, as stated in the Locust contract, as did the campaign which specifically required affirmative opt-ins.

### C. Class Certification Requirement 3: Typicality

It is likely this element appears to be satisfied, as the claim is for unwanted telephone calls, until one investigates the other class members. As with the numerosity requirement, it is possible that when a person is looking for something like medical supplies, when researching the goods on the internet, they can opt into received contact with or even without being aware of it.

### D. Class Certification Requirement 4: Adequacy

This Plaintiff is likely a prime an example of satisfying the adequacy requirement as is exhibited by the ultimate issue of whether he opted in to receiving the communication by visiting a particular website. The Court does not make that final judgment at this phase, but merely recognizes the evidentiary issues at hand with the proposed class and the likelihood that his Plaintiff as offered, does adequately represent the difficulties ahead with certifying the proposed class definition.

### E. Additional Class Certification Requirement 5: Rule 23(b)(2)

**RULE 23(b)(2):** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole.

Plaintiff's entire justification under Rule 23(b)(2) is, once again, Defendant's alleged failure to "police" vendors. Policing is not itself a TCPA requirement, but instead relates to policy supporting a review of the acts and actions taken when examining the agency principles.

As argued above in Section III, incorporated hereat, Plaintiff's own exhibits show that Defendant's vendor contract supports defeating vicarious liability through agency principles.

Plaintiff does not identify the precise injunctive or declaratory relief sought except to have proper policies, but that is a function of the agency examination particularly when this Defendant does not originate calls from the business. Moreover, the examples of injunctive relief other matters do not relate to the operation of this Defendant. Those include ceasing the use of illegal automatic dialers, ceasing the use of other equipment that dialed wrong numbers, and prohibiting the sending of unsolicited facsimiles. Plaintiff fails to cite to a single behavior of the Defendant that should be enjoined, and this element is defeated.

## VI. CONCLUSION

For the reasons set forth above, Defendant asks this Court to deny certifying the proposed class.

April 8, 2024

Respectfully submitted,

De Boef Lucchesi, PC

By: */s/ Faith M. Lucchesi*
Faith M. Lucchesi
PA ID No. 86323
1402 S. Atherton Street
State College, PA 16801
Voice: (814) 231-4050
Faith@DLASC.com

Counsel for Defendant

**CERTIFICATION OF COMPLIANCE**

The undersigned counsel certifies that the foregoing brief complies with the word count limit stated in L.R. 7.8(b)(2). Omitting the case captions, tables, and counsel's signature block but including all footnotes, this brief contains 3944 words as determined by counsel's word processor.

/s/ Faith M. Lucchesi