**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GERARD JACKSON, individually and on behalf of all others similarly situated, | : | Civil File No. 4:22-cv-424-MWB |
| Plaintiff, | : | |
| | : | **CLASS ACTION** |
| v. | : | |
| LOCUST MEDICAL, LLC | : | |
| Defendant. | : | |

**<u>REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>**

## INTRODUCTION

Defendant's opposition to the Plaintiff's brief in support of his motion for class certification fails to address why this injunctive relief class action, seeking to enjoin conduct prohibited by the TCPA and bring the Defendant into compliance with the TCPA's other requirements, should not be certified. Defendant's opposition goes on for pages about irrelevant topics, misinterpretations of the Defendant's obligations under the TCPA, and simply quotes applicable law at considerable length without actually analyzing it. Most of the issues it identifies are reserved, if at all, for eventual trial. Defendant spends less than four pages actually articulating why the Defendant believes this case does not meet Rule 23(b)(2)'s admittedly deferential requirements, none of which have any merit. For the following reasons, there remains no question that the following class must be certified:

> **<u>National Do Not Call Registry Class</u>**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendants, including from the vendors Central Tact LLC, Clyrex, and In Call (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

## ARGUMENT

### A. __Plaintiff alleges direct liability. Nevertheless, Locust is liable for any conduct performed by its vendors.__

Defendant's claims for why this class fails on direct or vicarious liability grounds ignores the fact that the purpose of class certification is *not* to determine whether the Plaintiff will ultimately prevail on alleging direct or vicarious liability. As the Supreme Court has explained, the purpose of a "certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). Although the Plaintiff must show that liability can be determined on a classwide basis, he need not make a showing at class certification for either direct or vicarious liability under the TCPA. Despite this well-settled standard, however, the Defendant imposes its own quasi-summary judgment standard at class certification, requiring the Plaintiff to set forth "facts" and "argument" for why the Defendant's failure to "police its vendor" subjects it to vicarious liability (Br. at 11, 12).

Importantly, the Plaintiff does *not* seek to certify a Rule 23(b)(3) class that requires a showing of predominance, the grounds on which most vicarious liability TCPA class actions are challenged. Rather, the Plaintiff seeks to certify a Rule 23(b)(2) class. In a Rule 23(b)(2) class, "All the class members need not be aggrieved by or desire to challenge defendant's conduct in order for some of them to seek relief under Rule 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." *Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 88 (M.D. Tenn. 2004). Thus, so long as the Plaintiff can show that the Defendant has acted or failed to act on grounds applicable to the entire class, this Court should certify this action under Rule 23(b)(2).

The Northern District of California recently certified a Rule 23(b)(2) TCPA class where the defendant made similar vicarious liability arguments, claiming it was not liable for the actions of the contractors it hired to make calls. As the court explained in holding that predominance was met, “There are several ways to establish an agency relationship, including actual authority, apparent authority, and ratification.” *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299, at *13 (N.D. Cal. July 22, 2020). It went on to explain that it would certify the class because proving whether vicarious liability existed was determinable on a class-wide basis, as the issue was one for a reasonable juror’s perception and did not turn on how an individual class member may have perceived the call they received. *Id.* at *14.

But this Court need not even consider the vicarious liability issues at the class certification stage because it is clear that the Defendant has *directly* failed to act on grounds that are applicable to the entire class. As outlined in the Plaintiff’s motion, the Defendant admitted that it does not and never maintained an internal do not call list or do not call policy. Not only are these additional TCPA violations for which there is direct liability against the Defendant, but the existence of any purported consent does not at all bear on whether or not the Defendant made calls, either directly or through its vendors, without having such a list or policy. *Gulden v. Quicken Loans Inc.*, No. CV-16-00960-PHX-ROS, 2016 WL 9525223, at *3 (D. Ariz. May 31, 2016) Thus, this Court must only answer a simple question: did the Defendants initiate any calls (including through the use of vendors like Central Tact) without having such procedures or lists in place? *Bailey v. Domino’s Pizza, LLC*, 867 F. Supp.2d 835, 842 (E.D. La. 2012) (reasoning that 47 C.F.R. § 64.1200(d) “relates to a marketer’s duty to prepare internal policies to receive and implement affirmative requests not to receive calls.”).

Similarly, the Defendant's practice of using vendors that do not follow the TCPA and failing to audit them is a *direct* action. But even if the Court holds that the Plaintiff must prove *vicarious* liability for actions Defendant's vendors like Central Tact took, the Plaintiff has made more than a sufficient showing that such vicarious liability issues can be determined on a classwide basis; no individualized factfinding is required to adjudicate the nature of the contractual relationship between the Defendant and its vendors like Central Tact.

Notwithstanding the fact that the Plaintiff is not required at the class certification stage to show why the *Dish Network* vicarious liability factors are met, discovery has uncovered facts which clearly give rise to apparent authority sufficient to adjudicate vicarious liability classwide, which includes "the ability by the outside sales entity to enter consumer information into the seller's sales or customer systems." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6592 (2013). Specifically, at his deposition, Mr. Spadaro stated that created a Google Sheets file that each vendor could use to directly input information "such as patient history, medications and things of that nature." (Spadaro Dep. 61:8–24). Locust also provided "detailed information" about its target customer base and geographic parameters to its vendors. *Id.* (Spadaro Dep. 55–57, 71–72).

Of course, as already outlined in detail in the Plaintiff's main brief, Locust also put the onus of TCPA compliance on its vendors, despite being informed of the vendors' illegal activities, including falsification of consent information. For example, at his deposition, Mr. Spadaro stated that, with each such vendor hired by Locust, each such vendor "should know automatically" that they must comply with the TCPA, and that "they're the ones responsible and they should follow the guidelines that are in the TCPA," despite having no contractual assurances that this would be the case. (Spadaro Dep. 18:9–17). But even *if* there were contractual assurances that vendors would follow the TCPA, as the Defendant claims, merely

contractually requiring vendors to comply with the TCPA is plainly insufficient for a principal to discharge their obligations under the TCPA. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 660 (4th Cir. 2019) ("[P]arties cannot avoid the legal obligations of agency by simply contracting out of them."). The Fourth Circuit in *Krakauer* rejected an argument nearly identical to the one Defendant brings in its reply and held that the jury properly determined willful ignorance on a classwide basis:

> Dish argues that because it occasionally instructed SSN to follow the law, no reasonable jury could conclude that SSN's improper telemarketing calls were done within the scope of SSN's authority as Dish's agent. . . . The jury was presented . . . with evidence showing that Dish knew of SSN's statutory violations and its failure to comply with Dish's purported instructions. The evidence also showed that Dish failed to respond to these concerns in any serious way. . . . Dish had its chance to persuade the jury, and it lost.

*Id.*

Moreover, despite telemarketing campaigns accounting for "70 percent" of Locust Medical's business, it continues to work with a vendor named In Call, but, like the other two vendors, does not police In Call, require it to comply with the TCPA, or ever audited In Call's TCPA compliance. (Spadaro Dep. 34:14–23, 36:16–20). For class certification purposes, in determining whether such conduct is sufficiently provable on a classwide basis to impose vicarious liability for TCPA violations, this Court need only to look to the course of dealing as between the Defendants and each of the three vendors.

**B. <u>Courts routinely certify Do Not Call Registry class actions like this one.</u>**

1. <u>Courts routinely certify similar class definitions.</u>

Defendant's issue with the proposed class definition cites to *no legal authority* for why the class is at all inappropriate. Its challenge to the Plaintiff's definition must therefore necessarily fail. Regardless, the Court can nevertheless modify a class definition *sua sponte*, even after trial, to conform to the evidence. *See, e.g.*, *Krakauer*, 925 F.3d at 652 ("When new evidence became available, the court modified the class appropriately."); *Lavigne v. First Cmty.*

*Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *9 (D.N.M. June 5, 2018) (modifying class definition and granting certification of revised class); *Zeidel v. A&M (2015) LLC*, No. 13-CV-6989, 2017 WL 1178150, at *6 (N.D. Ill. Mar. 30, 2017) (granting class certification after parties proposed competing definitions). The remedy to a defective class definition is to correct it, it is not to deny class certification.

Defendant's specific issues with the definitions are all meritless. Defendant first takes issue to the class including "All persons in the United States." Defendant's argument for why a class of persons protected by a nationwide law should not apply nationwide borders on the frivolous. Courts routinely certify TCPA class actions with such identical language and have been upheld on appeal. *E.g., Krakauer*, 925 F.3d at 654, *cert. denied*, 140 S. Ct. 676 (2019). So too does the Defendant's argument for why the class should not apply to the more than five thousand class members whose identities have already been ascertained. Similarly, the class definition is based upon the TCPA's four-year statute of limitations. The Plaintiff is entitled to represent a class as inclusive as the statute of limitations for the relevant conduct.

2. The existence of purported consent does not mean the Plaintiff has failed to satisfy Rule 23(a)'s requirements.

Numerosity is clearly met in this case. The *only* authority cited by the Defendant for why any class certification requirement, including numerosity, is allegedly not met in this case is *KHS Corp. v. Singer Fin. Corp.*, No. CV 16-55, 2018 WL 4030699 (E.D. Pa. Aug. 23, 2018), a Rule 23(b)(*3*) class action where the Court held that a lack of predominance precluded certification. But while predominance is a requirement under Rule 23(b)(*3*), a showing of predominance is *not* required of a Rule 23(b)(*2*) class. The District Court in *KHS Corp.* did not even *examine* the numerosity requirement in that case. But numerosity is clearly met here as the Defendant has produced a *partial* list of people it called of over 5,000 individuals. As the attached Declaration

of Andrew Perrong shows, of the 965 unique, valid telephone numbers contained in that list, 647 of them, or more than 67 percent of those numbers, were on the National Do Not Call Registry. Given that there are at least 647 class members whose numbers on the Do Not Call Registry were called without consent, and countless more who were aggrieved by the Defendant's failure to maintain an internal do not call list or polices as required by law, the class clearly satisfies Rule 23(a)(1)'s numerosity requirement by any metric.

Defendant relies merely on conclusory statements without any legal authority for why the remaining prongs of Rule 23(a) are not satisfied. But this Court cannot rely on the Defendant's say so, in the absence of any well-developed legal authority, as Plaintiff has offered to the Court, to defeat class certification. As explained at length in Plaintiff's original motion, the only evidence of consent proffered as to *any* class member was Plaintiff's purported opt in allegedly submitted to a website owned and operated by a third party named Torchlight Technology Group. Torchlight denied ever having any record of any consent with Mr. Jackson's information or telephone number, and denied doing any business with Central Tact or Defendants. Consent does not exist here. Any evidence of purported consent obtained proffered in this litigation was a proven fabrication. The Defendant had to produce evidence supporting its affirmative defense of consent in discovery and was unable to do so. Accordingly, the absence of any consent to call numbers on the do not call registry is a common issue capable of a classwide resolution. Commonality is therefore easily satisfied.

Contrary to the Defendant's assertion, determining whether or not a number is on the Do Not Call Registry, together with whether any evidence of consent exists at all, is an issue that is particularly suited to a common, classwide answer. The requirement for determining if commonality and is met is if there is a central question common to the entire class that is at the

heart of the litigation. The Plaintiff's task is to demonstrate a “common” legal *or* factual question that “predominates,” which has been achieved by showing that (1) no consent was obtained as to any class member and (2) that, of the almost 6,000 individuals for which there exist records comprising 965 phone numbers, 647 were on the Do Not Call Registry. A plaintiff can show commonality in a TCPA class action alleging consent by proving there is no consent data whatsoever, as here. *See, e.g.*, *Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016). But a plaintiff can also demonstrate these requirements by pointing to a *common defect* in the consent evidence as a whole, thus raising a common legal or factual question tending to disprove consent. *See, e.g., Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014). Here, although no consent evidence has been proffered as to any class member, the one piece of consent evidence relied upon for the Defendant to contact the Plaintiff was proven not to have originated from its claimed source, thus demonstrating an easily-proven common defect in the consent as a whole. Either way, the Defendant has called numbers on the Do Not Call Registry without consent, thus rendering classwide injunctive relief appropriate.

But even *if* this Court were to hold that there existed consent evidence sufficient to preclude a finding of commonality as to the Do Not Call Registry claims, the Plaintiff still demonstrates yet another common legal and factual question sufficient to establish commonality and certify the class: whether the Defendant initiated calls without having Do Not Call policies or procedures in place. This argument is not, as Defendant claims, reliant on common law agency or any “policing” argument. The text of the applicable regulations, 47 C.F.R. § 64.1200(d)(1) and (3) require any person or entity making calls for telemarketing purposes to have both written policies for maintaining a do not call list as well as an internal do not call list. These requirement apply not only to entities making calls themselves but also for any calls made

"by or on behalf of that person or entity." As explained in the original brief and as articulated above, this is a common legal and factual issue that imposes direct liability regardless of whether there is consent or a number is listed on the Do Not Call Registry. These causes of action would apply to all of the at least 5,977 unique class members.

Defendant's paragraph on typicality appears to concede that typicality "appears to be satisfied." Nevertheless, Defendant relies on its unproven "consent" defense to argue that typicality is nevertheless unsatisfied, and that defense already has a typical, uniform answer to the class: there is no consent. Without further analysis, Plaintiff cannot adequately address any concerns that Plaintiff's experience was at all atypical. Defendant's paragraph on adequacy of representation also falls short. In sum, adequacy tests whether the class representative has a conflict of interest with other class members and can serve in the class's best interests. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997). Nothing has been adduced to show that Mr. Jackson is inadequate. The lack of evidence supporting final judgment or an affirmative defense has nothing to do with adequacy and will be addressed appropriately.

3. Defendant has both acted and failed to act on grounds applicable and common to the entire class, thus satisfying Rule 23(b)(2)'s requirements.

The class Plaintiff seeks to represent seeks injunctive relief, to be determined and awarded at an appropriate juncture of the case, but the Plaintiff does not merely seek injunctive relief requiring the Defendant to "police" its vendors. As has been already explained and as will be developed at trial, the Defendant made calls, both directly and using vendors, to numbers on the Do Not Call Registry without obtaining consent. The Defendant has therefore acted in such an unlawful manner in contravention of each class member's rights. That is a violation of the TCPA, 47 U.S.C. §227(c), which explicitly permits entry of injunctive relief to enjoin such a violation as a remedy for such violation. 47 U.S.C. §227(c)(5)(A). Moreover, the Defendant has

also acted unlawfully in failing to maintain Do Not Call policies and procedures or an internal Do Not Call list. Those claims are subject to the same injunctive relief.

Defendant has acted unlawfully with respect to the entire class, thus rendering an injunction appropriate. Although the Plaintiff need not outline the precise injunctive relief requested at this stage, at minimum, the Plaintiff seeks the Court require the Defendant, and any successor entity and/or co-Defendant, to scrub all calls against and refrain from calling any number on the National Do Not Call Registry, regardless of whether the Defendant places calls itself or uses a vendor to place the calls. Defendant must also be required to obtain legally sufficient prior express written consent to contact consumers or ensure any vendors it uses obtain the same. Finally, this Court must require the Defendant to create and implement a Do Not Call policy and maintain an internal Do Not Call list, as explicitly required by 47 C.F.R. § 64.1200(d), prior to making any more telemarketing calls, including through vendors.

## CONCLUSION

Because the Plaintiff has satisfied Rule 23's admittedly deferential requirements, and because the Defendant has failed to develop any legitimate legal argument as to why class certification is inappropriate, Plaintiff respectfully requests that this Court (1) certify the proposed Class, (2) appoint Mr. Jackson to serve as the Class Representative, and (3) appoint Paronich Law, PC, as Class Counsel.

For the Plaintiff,

**/s/ *Anthony I. Paronich***

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Dated: May 2, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this May 2, 2024, I electronically filed the foregoing using the CM/ECF system, and that notice of such filing was made electronically to the registered counsel of record.

**/s/ *Anthony I. Paronich***
Anthony I. Paronich