IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERARD JACKSON, individually and on behalf of all others similarly situated, | No. 4:22-CV-00424 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LOCUST MEDICAL, LLC, | |
| Defendant. | |

MEMORANDUM OPINION

MAY 24, 2024

## I.    BACKGROUND

On March 21, 2022, Gerard Jackson, Plaintiff, filed a one-count complaint alleging a violation of the Telephone Consumer Protection Act ("TCPA") against Locust Medical, LLC, Defendant, on behalf of himself and a putative class.[1] The Court then issued a Case Management Order on November 30, 2022 to govern this case.[2] In that Order, the filing of amended pleadings and the joinder of additional parties were to occur by March 31, 2023.[3] Although the Court cancelled later pretrial and trial deadlines on February 23, 2024,[4] that Order did not disturb the

---

1   *See* Doc. 1 (Compl.).
2   *See* Doc. 20 (Case Mgmt. Ord.).
3   *See id.*
4   *See* Doc. 30 (Ord. Granting Extension and Canceling Deadlines).

finality of any prior deadlines. On February 23, 2024, the Court also permitted Plaintiff an extension to file a motion for class certification.[5]

Now pending before the Court are Plaintiff's Motion to Amend the Complaint and Motion to Certify Class.[6] Through these motions, Jackson seeks to add George Spadaro, the owner of Locust Medical, as a defendant and to certify a class under Federal Rule of Civil Procedure 23(b)(2).[7] These motions are now ripe for disposition; for the reasons that follow, both the Motion to Amend the Complaint and the Motion to Certify Class are denied.

## II.  DISCUSSION

### A.  Rule 16 Standard

When seeking to modify a case management order, Federal Rule of Civil procedure 16(b)(4) requires the moving party to establish "good cause" for the amendment.[8] "The touchstone for assessing whether there was good cause to amend a complaint is whether the moving party showed due diligence in bringing their claims."[9] "'Many courts have recognized that [w]here … the party knows or

---

[5] *See id.*
[6] *See* Doc. 31 (Motion to Amend Compl.); Doc. 32 (Motion to Certify Class).
[7] *See id.*
[8] *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 318 (3d Cir. 2020).
[9] *Rogers v. Wilmington Trust Co.*, No. 21-1473, 2022 U.S. App. LEXIS 5653, 2022 WL 621690, at *13-14 (3d Cir. Mar. 3, 2022) (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010)).

2

is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.'"[10]

### B.     Rule 15 Standard

Federal Rule of Civil Procedure 15(a)(2) requires the court to "freely give leave [to amend] when justice so requires."[11] This is a "liberal standard."[12] Under Rule 15(a), "[a] district court may deny leave [to amend] upon finding undue delay, bad faith, prejudice to the opposing party, or futility."[13] "'The function of Rule 15(a) … is to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint.'"[14]

### C.     Rule 23 Standard

"A party seeking class certification must satisfy the four requirements of Rule 23(a), as well as the requirements of either Rule 23(b)(1), (b)(2), or (b)(3)."[15] Rule 23(a) requires: "(1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties

---

[10] *Pegley v. Roles*, Civil Action. No. 17-732, 2018 U.S. Dist. LEXIS 65052, 2018 WL 1863024, at *3-4 (W.D. Pa. Apr. 18, 2018) (quoting *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2015)).
[11] *Premier*, 970 F.3d at 318.
[12] *Id.* at 319.
[13] *Rogers*, 2022 U.S. App. LEXIS 5653, at *13 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).
[14] *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedures* § 1473 (3d ed. 2019)).
[15] *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008)).

must be typical of the claims or defense of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simple adequacy)."[16] "Rule 23 is not a pleading standard; each requirement must be 'satisf[ied] through evidentiary proof.'"[17]

"Assuming a plaintiff can show that all of those conditions exist, the requirements of Rule 23(b) come into play."[18] "To satisfy Rule 23(b)(2), [Jackson] then had to show that [Defendant] 'has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"[19]

### D.  Factual Background

Jackson has known that George Spadaro is the owner of Locust Medical since at least January 19, 2022.[20] Over the course of Spadaro's deposition in April 2023, it was revealed that the third-party vendor, Central Tact, LLC ("Central Tact"), which Locust Medical used to place telemarketing calls had "abruptly cut off communication" with him.[21] From May to August 2023, Jackson sought third party discovery from Central Tact in an attempt to acquire its call records and to

---

[16] *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590-91 (3d Cir. 2012)).
[17] *KHS Corp. v. Singer Fin. Corp.*, Civil Action No. 16-55, 2018 U.S. Dist. LEXIS 143337, 2018 WL 4030699, at *6 (E.D. Pa. Aug. 23, 2018) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)).
[18] *Ferrerras*, 946 F.3d at 183.
[19] *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 894 (3d Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)).
[20] *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 3 (Plaintiff's Pre-Litigation Demand Letter).
[21] Doc. 35 (Brief in Support of Motion to Amend Compl.) at 2.

add it to this suit.[22] Based on these efforts, Plaintiff believes that Central Tact is a shell company that is controlled by an Egyptian entity.[23] Following this unsuccessful attempt, in August 2023, Locust Medical "produced its call file of the leads it purchased from Central Tact."[24] This file contained records where sales were actually made.[25]

The Court has only received a copy of one contract between Locust Medical and Central Tact.[26] In that contract, Defendant imposes a variety of constraints on what leads it would accept, including geographic location, age, and consent.[27] There is no explicit provision requiring adherence to the TCPA, and Defendant did not monitor Central Tact's compliance.[28] Locust Medical also did not maintain any internal procedures to ensure its own compliance with the TCPA.[29] Throughout the pendency of this suit, Defendant has continued to use other third-party vendors in a similar way.[30]

---

[22] *See id.*
[23] *See id.*
[24] *See id.*
[25] *See id.*
[26] *See* Doc. 32 (Motion to Certify Class), Ex. 2 (Marketing Services Agreement).
[27] *See id.*
[28] *See id.*
[29] *See* Doc. 32 (Motion to Certify Class) at 11 (citing Spadaro Dep. ¶¶ 37:8-20).
[30] *See* Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3.

### 1. Spadaro's Purported Deception

In his present motions, Jackson contends that Locust Medical deliberately hid its alleged lack of assets until February 28, 2024.[31] Plaintiff asserts that this lack of assets "was flatly contradicted" by the following four aspects of Spadaro's deposition.[32]

#### a. Office Location

First, Spadaro allegedly represented that Defendant had an office in Clinton, West Virginia.[33] Locust Medical notes that this office is its business address, but it is a rental property.[34] In making this distinction, Defendant also observes that "Plaintiff did not ask if the property was owned or rented."[35]

#### b. Walk-in Orders

Next, Plaintiff emphasizes that Spadaro had stated "that individuals can walk into the office to purchase medical supplies and that they 'get a lot of walk-ins'" at its West Virginia location.[36] Defendant responds by acknowledging that members of the public "can order medical supplies in person just as they can on the phone and all such purchases were handled the same way …."[37] Locust Medical "would place the order with the appropriate supplier who wou[l]d direct mail the goods to

---

[31] *See id.* at 2.
[32] *Id.* at 3.
[33] *Id.*
[34] *See* Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.
[35] *Id.*
[36] Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3.
[37] Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.

the customer, just as occurred" when Jackson ordered medical supplies from Defendant.[38] Further, Spadaro explicitly indicated that 70% of its business could be traced to the telemarketing calls.[39] At no point did Plaintiff ask if Locust Medical "was a retail business … or if it owned inventory."[40]

### c. Medicare Licensing

Third, Jackson highlights that Spadaro had asserted that Locust Medical "had appropriate licenses in the United States, including the ability to bill Medicare."[41] Defendant represents that it "does hold appropriate[] licenses in the United States[,] including the ability to bill Medicare."[42] In fact, in his Complaint, Jackson averred that Defendant had billed Medicare for the goods he purchased.[43]

### d. Logistical Employees

Finally, Plaintiff argues that Spadaro purposefully created the illusion of a larger operation by implying that Locust Medical employs two logistical employees.[44] In actuality, Spadaro stated that Defendant has only two employees who handle logistics as well as customer service and office management tasks.[45]

---

[38] *Id.*
[39] *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 1 (Spadaro Dep.) ¶¶ 34:11-14.
[40] Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.
[41] Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3.
[42] Doc. 36 (Brief in Opposition to Motion to Amend Compl.) at 7.
[43] *See* Doc. 1 (Compl.) ¶ 27.
[44] Doc. 35 (Brief in Support of Motion to Amend Compl.) at 3 ("Mr. Spadaro represented that … [Locust Medical] employs two persons who handle logistics in the United States.").
[45] *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 1 (Spadaro Dep.) ¶¶ 7:9-8:2.

### 2. The Putative Class

Plaintiff contends that there are at least 647 class member victims[46] and that this "list actually underestimates the size of the class because it identifies only those customers …" that were sold medical products.[47]

### E. Analysis

#### 1. Spadaro's Purported Deception

Before determining if Plaintiff may amend his complaint, I take a moment to address Spadaro's purported deception. It is actually Plaintiff's interpretation of Spadaro's deposition testimony that "stretch[es] credulity."[48] After cherry-picking supposed falsities, Plaintiff contends that this "overall obstruction and ball-hiding" cannot be justified by "technically true" statements.[49] But a cursory review of the deposition reveals that Plaintiff has largely misconstrued Spadaro's statements. Perhaps realizing his miscalculation, Jackson backtracks and concludes that the veracity of these statements is ultimately "a red herring that does not bear on the standard for amending a complaint."[50] The reason for this change does not escape the Court's attention.

---

[46] *See* Doc. 41 (Reply Brief in Support of Motion to Certify Class), Ex. 1 (Perrong Decl.) ¶ 16.
[47] Doc. 32 (Motion to Certify Class) at 8.
[48] Doc. 40 (Reply Brief in Support of Motion to Amend Compl.) at 2.
[49] *Id.* at 1.
[50] *Id.*

### 2. Motion to Amend the Complaint

The United States Court of Appeals for the Third Circuit recently "clarif[ied] that when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) … applies."[51] "A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."[52]

Despite this clear direction, neither party addresses Rule 16. This is particularly surprising as both parties acknowledge that the deadline to join additional parties has long passed.[53] Since it is Plaintiff's burden to demonstrate due diligence,[54] I am able to deny this motion on this failure alone.[55] Nevertheless, I am familiar with the underlying facts of this case, and I will apply the standard now for the sake of completeness.

"A moving party has failed to establish due diligence when the record shows that the party was aware of the facts underlying its motion to amend at an earlier

---

[51] *Premier*, 970 F.3d at 319.
[52] *Id.*
[53] *See* Doc. 31 (Motion to Amend Compl.) at 1 ("Plaintiff is cognizant of the mandates imposed by Court orders setting scheduling deadlines."); Doc. 36 (Brief in Opposition to Motion to Amend Compl.) ("Plaintiff was well-aware of Spadaro … but now seeks to add him as an individual defendant … far outside of the time permitted in the Case Management Order ….").
[54] *See e.g.*, *Dasso Int'l, Inc. v. Moso N. Am., Inc.*, Civil Action No. 17-1574-RGA, 2020 U.S. Dist. LEXIS 199506, at *5 (D. Del. Oct. 27, 2020) (citing *Race Tires Am. Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 85 (3d Cir. 2010)).
[55] *See e.g.*, *Gap Props., LLC v. Cairo*, No. 19-cv-20117-KM-ESK, 2022 U.S. Dist. LEXIS 246231, 2022 WL 21296064 (D.N.J. Mar. 23, 2022) (Kiel, M.J.); *Severino v. Middlesex Cnty. Prosecutor's Off.*, Civil Action No. 19-19164 (MAS), 2024 U.S. Dist. LEXIS 78390 (D.N.J. Apr. 30, 2024) (Bongiovanni, M.J.).

time but failed to promptly move to amend."[56] Here, Jackson contends that he was unaware of Locust Medical's apparent lack of assets until February 28, 2024.[57] In reality, he "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to seek leave to amend the complaint far earlier.[58] As Locust Medical correctly notes, Jackson has been aware of Spadaro's existence since at least January 19, 2022 but chose not to name him in this suit.[59] Further, Spadaro's deposition testimony revealed, at least from the Court's point of view, that Locust Medical is a very small operation.[60] Failing to conduct the appropriate follow-up does not excuse Jackson's purported lack of knowledge.[61] It is not this Court's job to rescue Plaintiff from his own strategic choices and lack of diligence.

Although Jackson does not move under Federal Rule of Civil Procedure 19, I will still evaluate whether Spadaro's absence prevents the Court from

---

[56] *Assocs. In Med. Toxicology, P.C. v. Emogene Renea Snyder*, Civil No. 1:19-CV-01753, 2021 U.S. Dist. LEXIS 234601, at *4 (M.D. Pa. May 3, 2021) (Wilson, J.) (citing *Prince v. Aiellos,* No. 09-CV-05429, 2012 U.S. Dist. LEXIS 71017, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012)).

[57] *See* Doc. 35 (Brief in Support of Motion to Amend Compl.) at 2.

[58] *Little Pueblo Inn, LLC v. Stanback, P.C.*, Civil Action No. 20-11233 (RK) (RLS), 2024 U.S. Dist. LEXIS 25610, 2024 WL 623872, at *7 (D.N.J. Feb. 13, 2024) (quoting *Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755, 2012 U.S. Dist. LEXIS 56422, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012)).

[59] *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 3 (Plaintiff's Pre-Litigation Demand Letter).

[60] Several facts support this suggestion. Most importantly, Locust Medical maintains only one office and it employs only two employees. *See* Doc. 37 (Brief in Opposition to Motion to Certify Class), Ex. 1 (Spadaro Dep.) ¶¶ 7:13-16; 10:24-11:5. Further, its operations are geographically limited. *See id.* ¶¶ 57:1-6.

[61] *See Little Pueblo Inn*, 2024 U.S. Dist. LEXIS 25610, at *7.

"accord[ing] complete relief among [the] existing parties" as Plaintiff suggests.[62] Assuming that Spadaro may be held personally liable under Section 217 of the TCPA,[63] his absence does not deprive the Court of the ability to "accord complete relief …."[64] Spadaro's potential personal liability has no effect on whether Locust Medical may be found liable, nor does it impact the Court's ability to fashion injunctive relief, notwithstanding Jackson's suggestion that this relief is now less effective. Accordingly, I deny the Motion to Amend Complaint.

### 3. Motion to Certify Class

While Locust Medical challenges Plaintiff's proposed class definition and his ability to meet the requirements of Rule 23(a), I proceed directly to whether Jackson has satisfied Rule 23(b)(2). Rule 23(b)(2) requires "the party opposing the class has acted or refused to act on rounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[65] Despite likely meeting the requirements of 23(a), Jackson cannot certify his proposed class under Rule 23(b)(2).

---

[62] FED. R. CIV. P. 19(a)(1)(A).
[63] It is unsettled in the Third Circuit whether corporate officers face personal liability under Section 217 of the TCPA. *See City Select Auto Sales Inc. v. David Randall Assocs.*, 885 F.3d 154, 160 (3d Cir. 2018).
[64] Seeing as Plaintiff did not actually move under Rule 19, I limit my analysis to Rule 19(a)(1)(A) as that is the sole argument concerning joinder of required parties before the Court.
[65] FED. R. CIV. P. 23(b)(2).

In *Wal-Mart Stores, Inc. v. Dukes*,[66] "the Supreme Court [of the United States] stated that Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'"[67] But the "Supreme Court left open the possibility that monetary awards incidental to injunctive relief may be permissible under Rule 23(b)(2)."[68]

Although Plaintiff's brief exclusively discusses injunctive relief, the Complaint contains a request for a "reward to Plaintiff and the Class of damages, as allowed by law" in its prayer for relief.[69] I make this observation as it is the Complaint, not Jackson's representations in his subsequent filings, that ultimately controls the relief available to Plaintiff and the putative class.[70]

In the face of this request for statutory damages under the TCPA, it would be improper to certify this class under Rule 23(b)(2). These statutory damages are not incidental to the requested injunctive relief. Despite Jackson's emphasis that Defendant's purported behavior has continued in the face of this lawsuit, "each plaintiff is [still] independently entitled to statutory damages under the TCPA of $500 to $1500."[71] Assuming that the 647 proposed class members each received

---

[66] 564 U.S. 338, 131 S. Ct. 2541 (2011).
[67] *Yarger v. ING Bank, Fsb*, 285 F.R.D. 308, 320 (D. Del. 2012) (quoting *Dukes*, 564 U.S. at 360-61).
[68] *See id.* (citing *Dukes*, 564 U.S. at 366).
[69] Doc. 1 (Compl.) at 8.
[70] *See e.g.*, *Michel v. Workrise Techs. Inc.*, No. 1:21-CV-00681-LY, 2023 U.S. Dist. LEXIS 62163, 2023 WL 2874445 (W.D. Tex. Apr. 10, 2023).
[71] *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013).

only one call in violation of the TCPA and that they were willful violations,[72] that would lead to damages of nearly a million dollars. Given Jackson's repeated assertion that there are actually in fact thousands of potential class members,[73] this "strongly suggest[s] this is a case driven by money, not equitable relief."[74] Further, these damages are not "capable of 'mechanical' 'computation'"[75] and would instead require the very individualized reward of monetary damages the Supreme Court disavowed in *Dukes*.[76] Finally, I note that other courts have reached the same conclusion when faced with this question at various stages of litigation.[77] Plaintiff's motion for class certification is therefore also denied.

---

[72] As currently presented to the Court, it seems that there is a strong likelihood that Defendant would be found to have "willfully or knowingly" violated the TCPA.

[73] *See* Doc. 32 (Motion to Certify Class) at 8; Doc. 41 (Reply Brief in Support of Motion to Certify Class) at 7, 9.

[74] *Ung. v. Universal Acceptance Corp.*, 319 F.R.D. 537, 544 (D. Minn. 2017).

[75] *Zoulek v. Gannett Co.*, Case No. 22-cv-1464-bhl, 2023 U.S. Dist. LEXIS 87109, 2023 WL 3568359, at *6 (E.D. Wis. May 18, 2023) (quoting *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005)).

[76] *See e.g.*, *Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242 (S.D. Ohio 2017).

[77] *See e.g.*, *Zoulek*, 2023 U.S. Dist. LEXIS 87109, at *6 (striking class allegations related to certification under Rule 23(b)(2) in a TCPA case); *Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 293 (striking 23(b)(2) class allegations in a TCPA case); *Lyman v. Excel Impact, LLC*, Case No. 23-23767-cv-BLOOM/TORRES, 2024 U.S. Dist. LEXIS 29073, 2024 Wl 982562, at *4 (S.D. Fla. Feb. 20, 2024) (Torres, C.M.J.) (recommending 23(b)(2) allegations be struck, in part, due to monetary damages being the "predominant, not incidental form of relief" in a TCPA case); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 516 (E.D. Wis. 2014) (denying certification under Rule 23(b)(2) in a TCPA case); *Ung*, 319 F.R.D. at 544 (denying motion to certify a 23(b)(2) class due to, in part, the individualized damages available under the TCPA); *Fisher v. MJ Christensen Jewlers, LLC*, Case No. 2:15-cv-000358-RFB-NJK, 2018 U.S. Dist. LEXIS 36048, 2018 WL 1175215 (D. Nev. Mar. 6, 2018) (denying Rule 23(b)(2) certification due to, in part, the statutory damages requested under the TCPA); and *Cabrera v. Gov't Emples. Ins. Co.*, Case No. 12-61390-CIV-WILLIAMS, 2014 U.S. Dist. LEXIS 197169, 2014 WL 11894430 (S.D. Fla. Sept. 26, 2014) (denying

## III. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Amend Complaint and Motion to Certify Class are both denied.

An appropriate Order follows.

                                                BY THE COURT:

                                                *s/ Matthew W. Brann*
                                                Matthew W. Brann
                                                Chief United States District Judge

---

certification of a Rule 23(b)(2) class due to the request for statutory damages under the TCPA).